IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-10100 |
| ) | |
| TIMOTHY BABBITT, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Babbitt's Motions for Compassionate Release (Docs. 97,103), the Government's Response (Doc. 107), and Defendant's Reply (Doc. 108). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

Defendant pleaded guilty on April 23, 2014, to Conspiracy to Manufacture More than Fifty Grams of Methamphetamine. Doc. 49 at 2. Because of his criminal history, he was in category VI and his guideline range was 324–405 months' imprisonment. He faced a statutory minimum of ten years, to a maximum of life in prison. Doc. 83. On February 12, 2015, Defendant was sentenced to 262 months imprisonment followed by eight years of supervised release. Doc. 89 at 2. This sentence was subsequently reduced to 183 months on November 3, 2015. Doc. 94 at 2. His scheduled release date from the Federal Bureau of Prisons is December 11, 2026.

On March 29, 2020, Defendant filed a request for compassionate release with the Bureau of Prisons, and the warden denied his request on April 9, 2020. Doc. 107-1. On June 19, 2020, Defendant filed a Motion for Compassionate Release. Doc. 97. On July 30, 2020, appointed counsel filed an Amended Motion for Compassionate Release on his behalf. Doc. 103. On August

13, 2020, the Government filed its Response in opposition to compassionate release. Doc. 107. Defendant filed a reply on August 18, 2020. This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

If an inmate has a chronic medical condition identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming severely ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition reasonably may be found to be "serious" and to "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is

facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, a court must deny a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

## DISCUSSION

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A). Since the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A), an inmate is allowed to file a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for the BOP to file a motion or after waiting thirty days from when the inmate's request was received by the BOP, whichever is earlier. The statute states as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3528(c)(1)(A).

**A. Defendant Failed to Meet the 30-day Exhaustion Requirement.**

Here, Defendant failed to meet the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A). As the Government explains, Defendant requested a reduction in sentence from the BOP on March 29, 2020. Doc. No. 107 at 4. In his letter to BOP, Defendant does not reference any health condition that he believes would increase his risks if he were to contract COVID-19. Doc. 107-1 at 1. Instead, he references his elderly mother and stepfather, the programs he has been involved with while incarcerated, and the fact that he was stabbed fifteen times in a near fatal altercation. In his motion to this Court, he raises for the first time issues about his weight and other medical issues as risk factors.

BOP rejected Defendant's request for a reduction in sentence on April 9, 2020. Doc. 107-1 a 1. In its rejections, BOP stated that it was taking extraordinary measures to contain COVID-19 and that Defendant's request did not warrant a reduction in sentence after measuring his request against the relevant guidelines. *Id*. BOP also reminded Defendant that he could appeal, but Defendant does not point the Court to evidence that Defendant appealed BOP's denial of his request. Defendant suggests that he appealed the decision in his pro se motion, but neither he nor his attorney point the Court to evidence of that appeal, and his attorney appears to agree that Defendant does not meet the exhaustion requirements. Counsel instead argues that those requirements should be waived.

**B. Waiver of the Exhaustion Requirement**

The Court now turns to Counsel's arguments that exhaustion should be waived. The Supreme Court has held "one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. U.S.,* 395 U.S. 185, 193

(1969). The doctrine is applied in numerous situations and, like many judicial doctrines, is subject to numerous exceptions. *Id.*

Since COVID-19 has wreaked havoc on this country, many federal judges, including those in the Central District of Illinois, have considered this issue. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19. *See e.g. United States v. Anderson,* 2020 WL 2521513 (C.D. Ill. May 18, 2020); *United States v. Scparta,* 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020); *United States v. Guzman Soto,* 2020 WL 195323 (D. Mass. Apr. 17, 2020); *Untied States v. Russo,* 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *United State v. Smith,* 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); *United State v. Hanley,* 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020); *United States v. McCarthy,* 2020 WL 1698732 (D. Conn. Apr. 8, 2020). Other judges have held that the 30-day requirement is mandatory, not subject to exception. *See e.g. United States v. Cox,* 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); *United States v. Demaria,* 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); *United States v. Rensing,* 2020 WL 1847782 at *1 (S.D.N.Y. Apr. 13, 2020); *United States v. Roberts,* 2020 WL 1700032 at *2 (S.D.N.Y. Apr. 8, 2020).

The Seventh Circuit has not yet directly addressed the division, but the Central District of Illinois has previously interpreted Section 3582(c)(1)(A) to not require an inmate to fully exhaust BOP procedures before coming to court, in some circumstances, stating:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

*Anderson,* 2020 WL 2521513 at *4.

Based on the House Report for the First Step Act, the statute is designed to "enhance public safety and security." H.R. 115-699 at 22; *Id.* To automatically deny Defendant's motion without reaching the merits, could frustrate that purpose. However, even if the Court waived the exhaustion requirement, Defendant is otherwise ineligible for compassionate release.

### C. Eligibility for Compassionate Release

Defendant seeks compassionate release due to medical conditions that increase his risk for severe illness if he contracts COVID-19. Doc. 105 at 4. Defendant has a BMI of at least 35, which according to the CDC, increases his risk for severe illness. *Id.*; *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited 9/15/20)). He also cites repeated MRSA infections and a Hepatitis C diagnosis as placing him at higher risk in the facility. In Defendant's pro se motion, he mentions being a victim of a stabbing while incarcerated as a risk factor. Doc. 97 at 4. The parties disagree about Defendant's precise weight and the Government argues that Defendant is engaged in a weight loss effort that has been successful. Accordingly, the Government believes that Defendant can mitigate the risk of harm through continued weight loss efforts. Further, in contrast to some of the other BOP facilities where COVID-19 outbreaks are uncontrolled, there are currently only fourteen inmates and no staff members who are positive for COVID-19 at USP Terre Haute where Defendant is housed. (https://www.bop.gov/coronavirus/ (last visited on 9/23/2020)). As previously stated, "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release." See e.g., *United States v. Melgarejo*, 2020 WL 2395982 (C.D. Ill. May 12, 2020). Given the fairly limited number of infections present at the facility, the Court believes the BOP's approach to containing

the outbreak at this facility is adequate. Therefore, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release.

Moreover, based on his criminal history and conduct, the Court finds that Defendant would pose a danger to the community if he was immediately released. Most significantly, his PSR indicates that in 2012, Defendant kidnapped his roommate's son and held him hostage for two days due to a late shipment of drugs. Doc. 83 at ¶ 11. According to the PSR, when the roommate initially rejected the Defendant's plan to ship methamphetamine to the roommate's mother's home, the Defendant threatened to kill the roommate's mother and burn her home down. The roommate took this threat seriously and acquiesced to it rather than risk harm to his mother. However, when the drugs were not delivered to the roommate's mother on time, the Defendant then kidnapped the roommate's son and held him hostage for two days until the drugs were delivered. *Id*. at ¶ 11. Probation noted that they were unable to evaluate the potential harm to this individual if Defendant was released. Doc. 100 at 2.

Defendant also has numerous other instances of being violent and making threats of violence in his criminal history, and Defendant has had disciplinary infractions while incarcerated. Since being sentenced in 2015, the Defendant has been disciplined four times. On April 23, 2015, the Defendant assaulted another inmate. Doc. 107-3. On both July 23, 2015 and July 27, 2015, the Defendant admitted to using alcohol in BOP. On October 10, 2015, the Defendant was again fighting with another inmate. *Id*. Moreover, because of this record and other factors, BOP has determined that he has a high risk of recidivism. Doc. 107-4.

While Defendant points to the last five years of good behavior and obtaining his master's degree equivalency in religion, that is not enough for the Court to ignore a serious and sustained

history of violent conduct, including kidnapping minors and making death threats. Accordingly, the Court finds that his early release would not otherwise be justifiable under the § 3553(a) factors.

## CONCLUSION

For the reasons set forth above, Defendant's Motions [97] and [103] are DENIED.

Entered this 23rd day of September, 2020.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge